UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF | CASE NO. |
| **DANNIE S. KLEINBERGER** | **06-10373** |
| | **SECTION A** |
| DEBTOR | |
| | CHAPTER 7 |
| **BARBARA RIVERA FULTON** | ADVERSARY NO. |
| PLAINTIFF | **08-1054** |
| V. | |
| **JANET KLEINBERGER** | |
| DEFENDANT | |

## MEMORANDUM OPINION

Barbara Rivera Fulton, Chapter 7 Trustee ("Trustee"), filed this adversary proceeding seeking to revoke transfers allegedly made by Dannie Kleinberger, the debtor ("Debtor") to his wife, Janet Kleinberger ("JKleinberger") under 11 U.S.C. §§ 544, 547, 548, and the Louisiana Revocatory Action. A trial on the merits was held on January 6, 2009. At the conclusion of the trial, the parties submitted post-trial briefs, after which the Court took the matter under advisement.

### I. Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409.

### II. Facts

In December 2000, Debtor and JKleinberger terminated the community of acquets and gains previously existing between them and partitioned their community assets. The agreement was

approved by the Civil District Court for the Parish of Orleans on December 1, 2000, and recorded in the public records.

JKleinberger owns a home comprised of two units of equal size located at 2220 and 2222 Octavia Street ("Octavia"). JKleinberger, Debtor, and their daughters live in the upper unit. The lower unit is rented by JKleinberger.

JKleinberger inherited Octavia from her grandparents in 1999.[1]

Rents collected on the lower unit were $1,500 per month in 2004, but were $1,530 per month in 2005 and thereafter.

Although legally separate in property, Debtor and JKleinberger deposited both of their paychecks into a joint checking account from which household expenses were paid ("Joint Account"). JKleinberger also deposited the rents she collected from Octavia into the same account.

Octavia is encumbered by two mortgages. Both mortgage notes were executed by Debtor and JKleinberger.[2]

In 2004, JKleinberger's income from wages was $12,850.00,[3] and Debtor's income was $113,460.00.[4] In 2005, JKleinberger's income from wages $7,980.00,[5] and Debtor's income was

---

[1] Case no. 06-1247, pleading 48, pp. 16-17.

[2] The circumstances surrounding the execution of the first and second mortgages were previously discussed in this Court's opinion, found at case No. 06-1247, pleading 48.

[3] Exhibit 17.

[4] Debtor's income was calculated by taking the total combined wages from line 7 of Debtor and Defendant's joint tax return for 2004 (Exhibit 18), and subtracting Defendant's income for 2004 as shown on her W-2 (Exhibit 17).

[5] Exhibit 17.

$152,680.00.[6] In 2006, JKleinberger's income from wages was $11,675.00,[7] and Debtor's income was $75,528.00.[8]

Debtor filed a voluntary petition for relief under chapter 7 on April 26, 2006.

**III. Law and Analysis**

Under Louisiana law, once the community of acquets and gains is dissolved, all income and property of the spouses is separate in nature. In 2000, the community was dissolved and a partition of assets approved. Thus, all income earned by Debtor and JKleinberger is their separate property.

Octavia is a separate asset of JKleinberger as she acquired a 1/3 interest through inheritance from her parents and received a donation of the remaining 2/3 interest from her two siblings.[9] The circumstances surrounding the latter donation were the subject of a previous suit against JKleinberger in this Court and are relevant to this case as well.

On the death of JKleinberger's mother, she and her siblings each inherited an undivided 1/3 interest in Octavia. In 1999, her brother, Rod Solow, fraudulently mortgaged the property for $251,000.00 by forging his siblings names on powers of attorney in his favor. When he defaulted on the mortgage loan, a foreclosure was instituted. JKleinberger learned of her brother's fraud when she received notice that Octavia was in foreclosure. Rather than allow her home to be sold at auction, she and Debtor arranged for a loan to pay off the foreclosing creditor. Because

---

[6] Debtor's income was calculated by taking the total combined wages from line 7 of Debtor and Defendant's joint tax return for 2005 (Exhibit 19), and subtracting Defendant's income for 2005 as shown on her W-2 (Exhibit 17).

[7] Exhibit 17.

[8] Exhibit 2. Debtor's Schedule I, of which the Court took judicial notice, states that his total monthly income in 2006, the year he filed his bankruptcy petition, was $6,044.00.

[9] Case no. 06-10373, pleading 48, p. 17.

3

JKleinberger lacked sufficient income to qualify for a loan, Debtor cosigned as an accommodation party but is liable on the note *in solido* with JKleinberger.[10] Despite *in solido* liability under the mortgage notes, JKleinberger has paid the notes with her separate earnings. To the extent a mortgage payment was made from the Joint Account, the Court has allocated it as her separate expense.

When spouses are separate in property, each is responsible according to income, for ordinary household expenses and for the support of their children.[11] This includes any living expenses associated with a residence such as the payment of rent or a mortgage note.

Extraordinary expenses are the sole liability of the spouse incurring the charge. An example of extraordinary expenses are those incurred for the preservation or improvement of separate property. Normal expenses of maintenance are family costs to the extent they are associated with the unit occupied by the family.

### A. Specific Expenses Paid from the Joint Account

Based on the above legal conclusions, certain expenses paid from the Joint Account are the sole responsibility of JKleinberger either because they are extraordinary and incurred by her or were for the benefit of her separate property. These expenses include: plumbing, gate, fence, pool, and air conditioning repairs; repairs due to Hurricane Katrina damage; house painting; electrical wiring; renovations to baths and the kitchens; the purchase of new appliances, awnings, and storm shutters; and termite tenting. Flood and homeowner's insurance premiums are also JKleinberger's

---

[10] Because the notes were executed more than three years prior to the filing of this case, Mr. Kleinberger's signature can not be avoided as a fraudulent conveyance under either bankruptcy or Louisiana law.

[11] La. C.C. Art. 2373.

responsibility because they protect the investment she holds in Octavia.

Ordinary living expenses are shared by Debtor and JKleinberger according to their means. In this case, based on the relative income of JKleinberger and Debtor, in 2005, JKleinberger would be liable for 5% of the couple's ordinary household and dependent expenses. In 2006, her relative liability would rise to 15%.

A lump sum payment of $525.00 was made each month from the Joint Account for car and homeowners insurance. Because insufficient evidence was received to divide the charge into its component parts, it has been split *pro rata* between Debtor and JKleinberger as a family expense. Similarly, the AAA roadside assistance will also be split *pro rata* as a family expense because it covers not only Debtor and JKleinberger's vehicles but also their daughters' car and no delineation was offered.

Furniture bills have been split *pro rata* as a family expense because Debtor and JKleinberger testified that they picked out the furniture together and believed it was co-owned.

Debtor's life insurance premiums are also split *pro rata* as a family expense, since Debtor is the owner of the policy but JKleinberger is the beneficiary. Debtor is responsible as a separate expense for his disability, cancer insurance premiums, and medical bills.

Included as an ordinary living expense is the value of the space the family occupies. The Court adopts the market rents charged for the rental unit at Octavia as the monthly expense of occupancy associated with the Kleinbergers' use of the upper unit. Also included as ordinary living expenses are utility and cable bills, housecleaning, church contributions, groceries, veterinarian bills for the family pet, family vacations, tax preparation, clothing for their children and regular pool maintenance. Expenses attributable for the care of Debtor and JKleinberger's children, including,

but not limited to, food, tuition, school uniforms, school pictures, concert tickets, clothing, hair cuts, manicures, and their car have been included in family expenses.

To the extent determinable from the evidence, clothing purchased for either the Debtor or JKleinberger's benefit is attributable to the applicable party. Combined expenses for JKleinberger and her children (i.e. costs for hair and nails appointments) have been allocated, two-thirds as a family expense and one-third as the personal expense of JKleinberger.

The parties agreed that ATM withdrawals and dry cleaning charges were Debtor's separate expenses. Debtor is also responsible for notes and maintenance of the vehicle he drives, while JKleinberger is responsible for the expenses associated with the vehicle she drives. The couple is liable for the costs of the vehicle used by their daughters.

Debtor testified that he paid for any amounts charged on his American Express card otherwise not reimbursable by his employer. Because Trustee did not introduce proof as to the nature of these expenses, the Court finds that they are the separate expense of Debtor.

The Court finds that the bracelets purchased in May 2005 for a total of $2,670.50 were gifts from Debtor to JKleinberger and his daughters and are therefore a separate expense of Debtor.

### B. Summary of Calculations

Based on the evidence submitted at trial,[12] JKelinberger deposited $25,930.00 in separate funds into the Joint Account between May 2005 and April 2006.[13] During this same period, JKleinberger spent $55,418.97 for separate expenses and is responsible for $10,870.34 in family

---

[12] Exhibits 5 - 16.

[13] Although Trustee's Complain alleges that avoidable transfers were made within the three (3) years preceding the filing of this case, Trustee only submitted evidence of transfers occurring between May 2005 and April 2006.

expenses. Debtor owed JKleinberger $16,830.00 as his *pro rata* share for the family's use of the upper unit on Octavia.[14] As a result, JKleinberger contributed $23,529.31 less than her obligations resulting in a transfer by Debtor to her.[15] Trustee has alleged that this difference constitutes a preference, fraudulent conveyance or transfer subject to the revocatory action.

### C. Preference - 11 U.S.C. § 547

Section 547(b) provides:

Except as provided in subsection © of this section, the trustee may avoid any transfer of property of the debtor--
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made--
        (A) on or within 90 days before the date of filing of the petition; or
        (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if--

        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such debt to the extent provided by the provision of this title.

JKleinberger is not listed on either Debtor's original or amended schedules as a creditor nor did she file a proof of claim. No evidence was introduced as to any possible claim JKleinberger

---

[14] (1530 rent x 8 months x .95) = (1530 rent x 4 months x .85) = $16,830.00

[15] After taking into account the beginning balance in the Joint Account, the common earnings credited during the period, and all deposits by both Debtor and JKleinberger, the account ended with a positive balance. According to the Court's findings, that balance was as a result of a net positive amount of funds made by Debtor. Therefore, the shortfall in JKleinberger's deposits was offset by the use of Debtor's funds.

holds or held against Debtor's estate. Because Defendant is not a creditor, the transfer of funds to her by Debtor is not a preference under section 547.

### D. Fraudulent Conveyance - 11 U.S.C. § 548

Trustee alleges that by depositing his earnings in the Joint Account, Debtor transferred money to Defendant for which he received less than reasonably equivalent value and increased his insolvency.

Section 548 provides in pertinent part:

> (a)(1) The trustee may avoid any transfer ... of an interest of the debtor in property, or any obligation ... incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily - ...
> (B) (I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business. ...

Debtor's Schedules reflect that as of the petition date, Debtor had $10,206.00 in assets and $739,887.65 in liabilities.[16] The Bankruptcy Code defines insolvency as a financial condition such

---

[16] Exhibit 2.

that the sum of a debtor's obligations exceeds the fair value of his assets.[17] Under this definition, Debtor was insolvent on the petition date and transfers to JKleinberger through the Joint Account increased his insolvency. JKleinberger offered no evidence, other than the fair value of the family's occupancy at Octavia, of any additional consideration she transferred to Debtor. As the Court has already accounted for her contributions to the Joint Account and the fair value of Octavia, the Court concludes that Debtor failed to receive reasonably equivalent value for his transfers in the amount of $23,529.31. JKleinberger is an insider; therefore, the requirements of §548(a)(1)(B)(ii)((IV) have also been satisfied. As a result, Trustee's action in fraudulent conveyance is granted.

### E. Louisiana Revocatory Action

The Bankruptcy Code gives a trustee the authority to avoid transfers of debtors incurred by the debtor and voidable under applicable law by a creditor holding an unsecured claim.[18] Under Louisiana law, any creditor:

> has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.[19]

Also under Louisiana law, "An obligor is insolvent when the total of his liabilities exceeds the total of his fairly appraised assets."[20] As found above, Debtor's liabilities exceeded his assets on the petition date. The majority of Debtor's obligations stem from notes and guaranties to

---

[17] 11 U.S.C. § 522.

[18] 11 U.S.C. § 544(b)(1).

[19] La. C.C. Art. 2036.

[20] La. C.C. Art. 2037.

Whitney National Bank executed in October 1999 and April 2000.[21] Those obligations were outstanding throughout the period when the transfers were made and contributed to Debtor's insolvency. JKleinberger did not dispute the fact that Debtor was insolvent during the relevant period preceding his filing. As a result, the Court concludes that Debtor was insolvent under both Bankruptcy and Louisiana law during all relevant periods. The transfers to JKleinberger during 2005 and 2006 operated to increase Debtor's insolvency because they exceeded the fair value of any consideration given in exchange. Therefore, Trustee may recover $23,529.31 under the Louisiana Revocatory Action.

### IV. Conclusion

JKleinberger owes Trustee $$23,529.31 pursuant to 11 U.S.C. § 548(a)(1)(B)(I) and (ii)(I) and (IV) and Louisiana Civil Code Article 2036. A separate judgment will be rendered in accordance with this Opinion.

New Orleans, Louisiana, April 2, 2009.

                                        Hon. Elizabeth W. Magner
                                        U.S. Bankruptcy Judge

---

[21] Case no. 06-1247, pleading 48.